UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROOFERS LOCAL 149
PENSION FUND,

                Plaintiff,

v.

KAIJA MENYON PACK and
DIANA PERRY,

                Defendants.

Case No. 2:19-cv-10628
District Judge Terrence G. Berg
Magistrate Judge Anthony P. Patti

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR REIMBURSEMENT OF ATTORNEY FEES AND COSTS (ECF No. 31)

**I.**    **RECOMMENDATION**:  The Court should **GRANT IN PART** and

**DENY IN PART** Plaintiff's motion for reimbursement of attorney fees and costs

(ECF No. 31) and award Plaintiff $1,031.00 against the Pension Fund benefits

awarded to Defendant Pack.

**II.**    **REPORT**

    **A.**    **Background**

        **1.**    **Factual Background**

        On March 4, 2019, Plaintiff Trustees of the Roofers Local 149 Pension Fund

filed a complaint in interpleader pursuant to Fed. R. Civ. P. 22 and 29 U.S.C. §

1132(a), which governs protection of employee benefits under the Employee

Retirement Income Security Act (ERISA), to resolve competing claims to the Pension Fund of the decedent Charles Edwards, Jr. made by Defendants Kaija Menyon Pack and Diana Perry.  (ECF No. 1, PageID.1-2, ¶¶ 1-5.)  According to the allegations made in the complaint, the decedent's membership in the Pension Fund conferred upon his "surviving spouse," as defined by the Pension Fund's Plan Document, entitlement to a pre-retirement survivor annuity benefit. Because both Defendants Perry and Pack claimed to be the decedent's surviving spouse, Plaintiff filed this action "to protect itself against the vexation of multiple lawsuits brought by potential claimants for the vested benefit." (ECF No. 1, PageID.2-5, ¶¶ 3-4, 7-23.)  In so doing, Plaintiff requested an order requiring Defendants to answer the complaint in interpleader and litigate the claims for the Pension Fund benefit amongst themselves, and discharging it "from any further liability upon payment of the benefit, less attorneys' fees and costs, into the registry of this Court or as otherwise directed by this Court[.]"  (ECF No. 1, PageID.6.)

Defendant Perry filed her answer to the complaint and cross-claim *in pro per*[1] on March 18, 2019, requesting "judgment in her favor, [and] an order of the court declaring that she is the qualified surviving spouse and entitled to receive the pre-retirement survivor annuity benefit from the Fund . . . ."  (ECF No. 5,

---

[1] Defendant Perry's answer was partially drafted with the assistance of a licensed attorney from the Detroit Mercy Law Federal Pro Se Legal Assistance Clinic. (ECF No. 5, PageID.29.)

PageID.26, 28, ¶ 7.)  In so doing, she alleged that she and the decedent were

married August 18, 1979, never divorced, and thus remained legally married until

his death.  Therefore, any purported marriage between Defendant Pack and the

decedent would be void under Michigan law.  (ECF No. 5, PageID.27, ¶¶ 1-3.)

In contrast, Plaintiff struggled to complete service upon Defendant Pack.  On

June 20, 2019, the Court granted Plaintiff's motion to extend the life of the

summons for Defendant Pack (ECF No. 9), in which Plaintiff asserted it had made

diligent attempts to locate and serve her, and had:

> been in telephonic communication with [her], including most recently
> on May 30, 2019.  Upon representation by Ms. Pack, Plaintiffs are
> under information and belief that service of process will be completed
> via personal service on Wednesday, June 5, 2019.

(ECF No. 7, PageID.32.)  However, Defendant Pack did not return as executed her

certificate of service until July 30, 2019 (ECF No. 1), following Plaintiff's July 23,

2019 motion for alternate service, in which it asserted that Defendant Pack had

twice said she would pick up the pleadings from counsel's office but failed to do

so, and had provided her address, but neglected to sign the return receipt when it

mailed her the pleadings (ECF No. 10, PageID.50-51.)

Defendant Pack also failed to timely file an answer to Plaintiff's complaint,

prompting Plaintiff to request the entry of a default against her on August 29,

2019.  (ECF No. 14.)  However, the next day, Defendant Pack filed her answer *in*

*pro per*,[2] alleging that she is the decedent's surviving spouse because the two wed on May 25, 1991, and remained married until his death, and that Defendant Perry knew of the marriage because she attended the ceremony.  (ECF No. 16, PageID.80-82, ¶¶ 1-2, 5, 8.)  Further, Defendant Pack claimed that Defendant Perry married another man after her separation from the decedent.  (ECF No. 16, PageID.82, ¶ 9.)

The Court held a status conference with the parties on October 21, 2019, during which, according to Plaintiff's October 30, 2019 motion for summary judgment, "it was agreed that Plaintiff would file a motion for summary judgment."  (ECF No. 20, PageID.95, ¶ 3.)  In that motion, Plaintiff asserted that it had no means beyond moving for summary judgment "to protect itself against the vexation of multiple lawsuits brought by multiple claimants for the vested benefit," and requested "entry of a judgment permitting Plaintiff to interplead the benefit, less reasonable attorneys' fees and costs as determined by the Court, for payment to the determined beneficiary."  (ECF No. 20, PageID.95-96, ¶¶ 5-6.)  And in support of its request for attorney fees and costs, Plaintiff argued that "the Court has discretion to award costs and counsel fees to the stakeholder in an interpleader action whenever it is fair and equitable to do so," citing *Holmes v. Artists Rights*

---

[2] As a result, Plaintiff necessarily had to file a motion to set aside the Clerk's entry of default against Defendant Pack, which it did on September 23, 2019.  (ECF No. 18.)

*Enforcement Corp.*, 148 F. App'x 252, 259 (6th Cir. 2005).  (ECF No. 20, PageID.106-107.)

At the March 4, 2020 summary judgment motion hearing, Defendants Perry and Pack appeared *pro se*, although Defendant Perry's counsel had earlier filed his appearance.  (Hearing Transcript, ECF No. 24, PageID.161-162.)  Plaintiff's counsel presented Plaintiff's argument and then-available facts to the Court (ECF No. 24, PageID.163-167.)  Of note, Plaintiff's counsel stated: (1) the decedent and Defendant Perry wed in 1979; (2) the decedent and Defendant Pack wed on May 12, 1991; (3) in March 1993, the decedent filed a divorce action against Defendant Perry, ultimately dismissed for failure to prosecute; and (4) Defendant Perry married a man named Kenneth Day in November 1998.)  (ECF No. 24, PageID.164-165.)

The Court then pivoted to an evidentiary hearing to obtain additional information.  Defendant Perry testified that she did not know, but "heard hearsay," that the decedent and Defendant Pack had gotten married in 1991, and that she had only learned of the decedent's divorce filing against her when she filed for the Pension Fund benefits at issue.  (ECF No. 24, PageID.171-173.)  However, she confirmed that she had married Mr. Day in 1998, thinking at the time that she had divorced the decedent, and remained married to Mr. Day at the time of the hearing. (ECF No. 24, PageID.174, 184-185.)  Defendant Pack testified that she married the

5

decedent in 1991, after obtaining a marriage license, and believed he and

Defendant Perry were divorced at the time.

Following the hearing, Plaintiff and Defendant Perry, through counsel, filed

supplemental briefs (ECF Nos. 25 & 26), while Defendant Pack filed her *pro se*

response to the summary judgment motion (ECF No. 28).  Ultimately, the Court

granted Plaintiff's motion for summary judgment and awarded the Pension Fund

benefits to Defendant Pack, reasoning that Michigan law presumes the validity of a

later ceremonial marriage attacked on the ground that one of the parties was

already married, and stating:

> Considering the absence of admissible "clear and positive"
> evidence that [the decedent's] marriage to Pack was invalid, and the
> fact that Perry is asserting the validity of her first marriage to [the
> decedent] while simultaneously admitting that she remains legally
> remarried to (although separated from) another person, the Court
> concludes that under Michigan law Pack is the "surviving spouse" for
> purposes of identifying the proper pension plan beneficiary.

(ECF No. 29, PageID.354, 358.)  Further, the Court directed Plaintiff to submit an

additional motion for attorney fees if it wished to pursue such an award.  (ECF No.

29, PageID.361.)

## 2.    Instant Motion

Plaintiff filed its motion for reimbursement of attorney fees and costs on

June 1, 2020, in accordance with the Court's directive and pursuant to Fed. R. Civ.

P. 22 and 29 U.S.C. § 1132(a) and (g)(1), to which it attached an affidavit of

counsel setting forth the time spent on each aspect of the case and the attorneys' rates.  (ECF No. 31.)  Judge Berg referred this motion to me for a hearing and determination.  (ECF No. 32), after which Plaintiff filed a supplement to its motion (ECF No. 33) and *pro bono* counsel filed a response on Defendant Pack's behalf (ECF No. 35).

Plaintiff requests reimbursement from the Pension Fund benefit awarded by the Court to Defendant Pack in the amount of $13,185.60, representing the full fees and costs incurred as a result of bringing this interpleader action.  (ECF No. 31, PageID.365-366, 373, 377.)  In so doing, it relies mainly on 29 U.S.C. § 1132(g)(1), which governs the reimbursement of fees and costs in ERISA actions (ECF No. 31, PageID.371-372), as opposed to the law regarding reimbursement of attorney fees in interpleader actions that it cited in its motion for summary judgment (ECF No. 20, PageID.106-107),[3] and identifies five factors the Court should consider (ECF No. 31, PageID.371-372) (citing *Sec'y of the Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985)).  The five factors, Plaintiff argues, weigh in favor of an award.  (ECF No. 31, PageID.371-374.)  Plaintiff's supplement to the instant motion clarifies that "[t]he lump sum benefit payable to Defendant Pack would be $14,659.26 which represents the lump sum payment of

---

[3] However, as provided above, Plaintiff continues to cite Fed. R. Civ. P. 22 as a basis for an award of attorney fees and costs.  (ECF No. 31, PageID. 365, ¶ 6.)

7

the benefit retroactive to September 2018 ($666.33 x 22 months)."  (ECF No. 33, PageID.390.)

Defendant Pack concedes that "Plaintiff meets the discretionary legal standard for the award of reasonable attorneys' fees" under *Holmes*, and the law regarding reimbursement of attorney fees in interpleader actions (ECF No. 35, PageID.396-397), but argues that "payment of Plaintiff's attorneys' fees and costs should be borne by Defendant Diana Perry because Defendant Perry's conflicting and frivolous claim for [the decedent's] benefits was the impetus for this litigation" (ECF No. 35, PageID.396, 404-405).

### B.   Standards

ERISA contains a provision regarding the reimbursement of attorney fees and costs.  "In an [ERISA] action by a plan participant, beneficiary, or fiduciary, the court, in its discretion, '*may* allow a reasonable attorney's fee and costs of action to *either* party.'"  *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005) (quoting 29 U.S.C. § 1132(g)(1)) (emphases in original).

In contrast, "[n]either Rule 22 nor the interpleader statute contains an express reference to costs or attorney's fees."  *Holmes*, 148 F. App'x at 259 (citation and quotations omitted).  "Nevertheless, '[a] federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action, whether brought under Rule 22 or the interpleader statute, whenever it is fair and

8

equitable to do so.'" *Id*. "An interpleading party is entitled to recover costs and attorney's fees when it is (1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds into court,[4] and (4) has sought a discharge from liability." *Id*. (citing *Septembertide Publishing v. Stein and Day*, 884 F.2d 675 (2d Cir. 1989)). "The only limiting principle is reasonableness, and it is at the discretion of the Court to determine what award is appropriate." *Id*.

## C.   Discussion

### 1.   Defendant Pack should bear some of the fees, while Defendant Perry should not

In conceding that Plaintiff meets the discretionary standard for an award of attorney fees and costs, Defendant Pack asserts that Defendant Perry's frivolous claim to the Pension Fund "was the cause and catalyst for protracted litigation that resulted into the legal expenses incurred by Plaintiff[.]"  In support, she emphasizes Defendant Perry's marriage to another man at the time of the decedent's death as well as Perry's knowledge that the decedent and Pack had married in 1991.  (ECF No. 35, PageID.397, 400-403.)

---

[4] Plaintiff requests that the Court award fees and costs to be reimbursed from the benefit payable to Defendant Pack (ECF No. 31, PageID.377), and states in its supplement to the instant motion that "lump sum benefit payable to Defendant Pack would be $14,659.26," (ECF No. 33, PageID.390), but there is no evidence in the record that the Pension Fund has been deposited into the Court.  From what the Undersigned can discern, it is mutually understood by all parties that Plaintiff is willing to deposit the money at issue into Court, if necessary.

9

Defendant Pack acknowledges that the "usual practice is to tax the costs and fees against the interpleader fund" (ECF No. 35, PageID.397), particularly where obstructionist tactics cause the discredited interpleader to incur fees and costs associated with ongoing litigation.  Nonetheless, relying upon the Second and Eleventh Circuits' lead in, respectively, *Septembertide*, 884 F.2d at 683 and *Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1497-98 (11th Cir. 1986), she asks this Court to instead "order the payment of attorney's fees…from the losing defendant and not the disputed pension fund." (ECF No. 35, PageID.397.) However, she implicitly acknowledge that these cases are not binding on this Court, stating:

> The fair proposition offered by Ms. Pack to resolve the attorneys' fees issue has not been addressed in the federal districts of Michigan; however, Court rulings from other federal circuits and districts have demonstrated that this Court's ruling will be consistent with equity and fairness.

(ECF No. 35, PageID.398.)

In any case, I am unconvinced, as Defendant Pack asserts, that it would be fair and equitable, *see Holmes*, 148 F. App'x at 259, to tax all of Plaintiff's attorney fees and costs against Defendant Perry, or even award Plaintiff all of its requested fees and costs, for the reasons discussed here and in further detail below. Although in granting Plaintiff's motion for summary judgment and awarding Defendant Pack the disputed Pension Fund benefits, the Court questioned

Defendant Perry's assertion that her first marriage to the decedent was valid, while simultaneously admitting that she remains legally married to another person (ECF No. 29, PageID.358), it stopped short of finding Defendant Perry's claim to the Pension Fund to be frivolous or made in bad faith.  And, even in the cases cited by Defendant Pack and described above, some level of wrongdoing is seemingly required to tax fees and costs in an interpleader action against one of the interested parties as opposed to the interpleader fund itself.  *See Septembertide*, 884 F.2d at 683 (reasoning that "it was Septembertide's unreasonable litigation posture that prevented New Library from following the ordinary interpleader sequence"); *Boyd*, 781 F.2d at 1497-98 (stating that "[t]he usual practice is to tax the costs and fees against the interpleader fund, although the court may tax the losing claimant directly when her conduct justifies doing so," but rejecting the district court's taxation of costs and fees directly against the appellant because its finding of bad faith was unsubstantiated by the record).  Furthermore, Plaintiff's motion does not request fees against the losing defendant, but only against the prevailing defendant. Accordingly, Defendant Perry has not weighed in on this question, believing that she does not have a dog in this fight.  Although it may seem ironic for Perry, as the losing party, to bear no share of the costs at issue here, it would be unfair to make an award against her which was neither requested nor subjected to the normal adversarial process.

11

## 2.   Plaintiff should not bear the full cost of the litigation

Nor should the Court conclude that the law regarding the award of fees and costs in ERISA actions, cited by Plaintiff, supports a full award of Plaintiff's attorney fees and costs against the Pension Fund benefits awarded to Defendant Pack.  (ECF No. 29, PageID.358.)  Again, "[i]n an [ERISA] action by a plan participant, beneficiary, or fiduciary, the court, in its discretion, '*may* allow a reasonable attorney's fee and costs of action to *either* party.'"  *Bryant*, 410 F.3d at 851(quoting 29 U.S.C. § 1132(g)(1)) (emphasis in original)).  A flexible five-factor test, in which no single factor is dispositive, is utilized to assess whether a district court has properly exercised its discretion to award fees and costs in the above circumstances:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Id*.  (citations and quotation marks omitted).  Plaintiff argues that these factors, as well as general principles of fairness and equity, support its request for reimbursement of the entirety of attorney fees and costs associated with filing and litigating this interpleader action against the Pension Fund benefits awarded to Defendant Pack (ECF No. 31, PageID.370-377).  But I disagree.

First, although Plaintiff asserts that the first factor tilts in its favor, it explicitly states, "Plaintiff does not ascribe any culpability or bad faith on the part of either Defendant."  (ECF No. 31, PageID.373.)  And, as provided above, the Court did not explicitly find any on either defendant's part in its order granting Plaintiff's motion for summary judgment.  Moreover, as the prevailing litigant, culpability and bad faith can hardly be applied to Defendant Pack.  Second, consistent with Plaintiff's assertions, Defendant Pack could satisfy its request for attorney fees and costs from the awarded Pension Fund benefits, assuming the totals provided by Plaintiff in its supplement brief are accurate, but principles of fairness and equity should discourage this outcome, at least so far as Plaintiff requests full reimbursement.  Plaintiff requests $13,185.60 in attorney fees and costs (ECF No. 31, PageID.373), which would be the great majority of the $14,659.26 initial lump sum past benefit payment Plaintiff has represented Defendant Pack will receive (ECF No. 33, PageID.390).  Such a result, especially in light of Defendant Pack's self-representation throughout these proceedings (until now) and entitlement to the benefits, would be problematic.  *See Humana Ins. Co. of Ky. v. O'Neal*, No. 16-173, 2017 WL 3015173, at *7 (E.D. Ky. July 14, 2017) ("[T]he opposing party—Defendant Perkins—would have the ability to pay the attorneys' fees from the proceeds of the life insurance benefits.  But, the Court notes that fairness cautions against requiring the prevailing party to pay Humana's

attorneys' fees out of the benefits that it is rightfully entitled to receive."). The third and fourth factors, deterrent effect and common benefit, *Bryant*, 410 F.3d at 851, are largely inapplicable here, as Plaintiff seems to acknowledge, stating, for example: "Plaintiff does not believe that an award of fees would deter conduct on the part of a person under similar circumstances. However, it would be unfair to award fees in another case and not this one, or vice versa." (ECF No. 31, PageID.373.) And, finally, the relative merits of the parties' positions is somewhat inapplicable here, as Plaintiff was a disinterested stakeholder in the proceedings, and further concedes that each Defendant "raised bonafide arguments in support of their positions that they qualified as the surviving spouse." (ECF No. 31, PageID.374.) *O'Neal*, 2017 WL 3015173, at *7 ("The relative merits of the parties' positions are less relevant in this case, as Humana did not deny benefits to either party, but merely sought to determine which party was entitled to benefits ahead of making such a denial. Thus, there is no 'merit' to Humana's claim because it was a disinterested party. To the extent that the merits of the parties' claims are relevant, Perkins's claim was ultimately meritorious.") Thus, the Court should find that the factors do not favor reimbursement to Plaintiff for the entirety of its requested fees and costs.

### 3.   Defendant Pack should bear the fees and costs of service

However, the Court should find persuasive Plaintiff's general argument that fairness and equity support an award of attorney fees and costs, at least to some degree.  Throughout the instant motion and in analyzing the five applicable factors, Plaintiff asserts that it is entitled to its fees and costs because: (1) neither Defendant was represented by counsel for the majority of the matter, making discovery, coordination, and litigation in general costlier and more difficult; (2) Defendants failed to disclose certain facts until the summary judgment motion had been filed; and (3) it took considerable time and effort to serve Defendant Pack. (ECF No. 31, PageID.372-377.)  While Defendant Pack's lack of counsel may actually weigh against an award of attorney fees and costs from the Pension Fund benefits, effectively demonstrating her need for the benefits awarded and an "[in]ability to satisfy an award of attorney's fees," apart from taking it out of the benefits to which she has shown entitlement, *Bryant*, 410 F.3d at 851, fairness and equity support an award for those fees and costs Plaintiff incurred in attempting to complete service upon, and obtain and answer from, Defendant Pack.  As the Court is undoubtedly aware, having presided over the earlier proceedings, and as summarized above, Plaintiff was forced to take significant action to serve and seek an answer to its complaint from Defendant Pack, largely due to her own evasiveness and failure to follow appropriate procedures.  (*See* ECF Nos. 7, 9-11,

14, 16, & 18.)  Indeed, in her response to the instant motion, Defendant Pack

alternatively argues:

> If the Court finds that any of Plaintiff's attorneys' fees should
> be paid by the fund, the fees should be divided between both
> claimants based upon the charges associated with the professional
> services necessitated by the acts of the respective claimant.
> Specifically, Ms. Pack submits that the pension fund should only be
> responsible for costs associated with the service attempts made upon
> Ms. Pack and a minimal share of the expenses related to Plaintiff's
> counsel's professional services.

(ECF No. 35, PageID.405.)  And, despite her lack of representation throughout the

majority of the proceedings, Defendant Pack was expected to follow the rules and

procedures of the Court.  *See Fields v. Cty. Of Lapeer*, No. 99-2191, 2000 WL

1720727, at *2 (6th Cir. 2000) ("[I]t is incumbent on litigants, even those

proceeding pro se, to follow the . . . rules of procedure.") (citation and quotations

omitted).

The Court could reach the same result under the law regarding attorney fees

in interpleader actions, including *Holmes* and its progeny.  Again, "[a] federal

court has discretion to award costs and counsel fees to the stakeholder in an

interpleader action, whether brought under Rule 22 or the interpleader statute,

whenever it is *fair and equitable* to do so."  *Holmes*, 148 F. App'x at 259 (citations

and quotations omitted; emphasis added).  However, courts in the Sixth Circuit

have recognized exceptions to this general principle, and denied attorney fee

motions, in the context of insurance company interpleaders, on the basis that: (1)

16

insurance companies should not be compensated because conflicting claims arise

during the normal course of business; (2) insurance companies are interested

stakeholders; and (3) such an award would deplete the fund that is the subject of

preservation through interpleader. *UNUM Life Ins. Co. of Am. v. Kelling*, 170

F.Supp.2d 792, 794-95 (M.D. Tenn. 2001). *See also Life Ins. Co. of N. Am. v.*

*Bond*, No. 1:11-cv-146, 2013 WL 12178133, at *7-9 (S.D. Ohio Feb. 5, 2013);

*UNUM Life Ins. Co. of Am. v. Bowman*, No. 2:16-cv-794, 2017 WL 5496299, at *3

(S.D. Ohio July 3, 2017); *Prudential Ins. Co. of Am. v. Coopwood*, No. 17-14145,

2018 WL 8807139, at *3 (E.D. Mich. July 13, 2018) (Tarnow, J.) ("awarding

attorneys' fees 'would senselessly deplete the fund that is the subject of the

preservation through interpleader.'" (quoting *Kelling*, 170 F.Supp.2d at 795)).

Although these cases are not completely analogous, as Plaintiff here is the trustee

of a Pension Fund as opposed to an insurance company, the Court may consider

the exceptions outlined in the above cases as a guideline to determine what award,

if any, is fair and equitable here.  Assuming all three exceptions are applicable, the

Court could and should find that the issues Plaintiff faced with service and

Defendant Pack's delayed response to its interpleader complaint were outside the

normal course of its business (disseminating benefits to the proper claimants and

filing interpleader actions when necessary to do so), and award Plaintiff the

associated fees and costs. *See Union Security Ins. Co. v. Hockensmith*, No. 5:17-

17

CV-228, 2019 WL 430892, at *3 (E.D. Ky. Feb. 4, 2019) (finding that the fees sought by the interpleader insurance company were those that arose from the interested party's "repetitive, unnecessary, and manifold filings" and, thus, were not fees based on actions taken within the normal course of business).

In accordance with Local Rule 54.1.2, Plaintiff's counsel submitted an affidavit "setting out in detail the number of hours spent on each aspect of the case, the rate customarily charged by counsel for such work, [and] the prevailing rate charged in the community for similar services . . . ." (ECF No. 31-1.)  Defendant Pack concedes the reasonableness of the number of hours and hourly rate requested. (ECF No. 35, PageID.404.)  The Court should find the requested rates – $200/hour for work performed by shareholder Matthew I. Henzi, $175/hour for work performed by associate Jessica L. Rowley, and $70 for work performed by paralegal Deborah Vallie – reasonable and, upon review of the charts provided related to services performed as well as a costs associated with bringing Defendant Pack into this action, award Plaintiff $1,031.00 in attorneys' fees and costs against the Pension Fund benefits awarded to Defendant Pack.[5]  in addition to the fact that

---

[5] This represents the work in the chart listed for the following dates: April 18, 2019, May 28, 2019, June 4, 2019, June 19, 2019, July 23, 2019, July 30, 2019, August 28, 2019, September 3, 2019, and September 23, 2019, as well as the costs regarding service listed below the chart ($395 divided by 2, as the entry lists a total of $395 for service of both Defendants).  (ECF No. 31-1, PageID.385-387.)  I have excluded fees calculated on certain dates for which counsel combined work where it is especially difficult to differentiate and apportion from other charges.

these rates and quantities are uncontested, the Court notes "from its own experience" that these rates and amounts are demonstrably reasonable in this District, and in fact below the norm. *Thomas v. Bannum Place of Saginaw*, 421 F.Supp.3d 494, 498 (E.D. Mich. 2019).

### D. Conclusion

In the end, Defendant Pack did receive a benefit from this litigation, and it would not be inequitable for her to bear some share of the costs associated with it, particularly those most closely associated with her own lack of cooperation. However, it seems inequitable to have her bear the entire or even the majority of the cost under the circumstances. As she noted in her brief, she was married to the decedent for 27 years, and they raised six biological children and provided foster care to over 20 other children together, both formally and informally. As the surviving spouse, she filed a claim and attempted to collect her survivor benefits. (ECF No. 35, PageID.398-399.) Her ability to collect what was rightfully hers was impeded by a former wife who had subsequently re-married another man long before the decedent passed. (*Id*. at PageID.402.) The costs associated with that unfounded and likely unanticipated claim should not be deducted from Defendant Pack's share of the Pension Fund, as she would ostensibly appear to be a victim of the unfounded claim, rather than a cause of this litigation. On the other hand, while also not the cause of this litigation, Plaintiff is in a better position to absorb

the bulk of this cost within the ordinary course of fulfilling its fiduciary responsibilities, which may from time to time involve sorting out competing claims.  The Court should **GRANT IN PART** and **DENY IN PART** Plaintiff's motion for reimbursement of attorney fees and costs (ECF No. 31) and award Plaintiff $1,031.00 in attorneys' fees and costs against the Pension Fund benefits awarded to Defendant Pack.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  December 23, 2020

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE